# APPENDIX.

THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.*
WILLIAM A. BRYDON, use of HENRY G. DAVIS
& Co.

*Motion for Rehearing.*

Judge BRYAN filed the following opinion:

In looking over the advance sheets of this volume a few days ago, I saw the opinion of the Chief Justice on this motion, (*ante p.* 223.) I had no knowledge of its existence before this time. Immediately after this motion was overruled, the Court took a recess of some weeks. It is unusual to file opinions when such motions are disposed of, and none was filed at the time. This one embodying the individual views of the Chief Justice was filed sometime afterwards; it was never read to the Court, and my attention was not called to it. The occasion requires that I should state my reasons for adhering in all respects to the opinion of the Court originally delivered; and the circumstances which I have mentioned will account for my delay in doing so.

In this case there are thirty bills of exception, and the record comprises three hundred and ninety-seven large folio pages of printed matter. I made a careful, minute and laborious investigation of every question, and of every phase of every question presented in the case. The amount involved was very large, and the responsibility of the decision was felt to be very great. The labor of considering the immense mass of matter contained in the record was cheer-

fully performed with an earnest and anxious desire to do equal and exact justice between the parties according to law. And when the learned counsel filed their able argument for a rehearing, it received from me the careful and respectful consideration which it merited. If there be errors in my opinion they are not the result of carelessness, or inadvertence or design; but are due to infirmity of judgment.

The great question in the case was whether the rejection of the coal by the master of transportation and master of machinery was made in good faith, or in fraud. The object of the opinion which I delivered was to group together the facts and circumstances in evidence, which it was competent for the jury to consider in the determination of this question. It was not my purpose (neither was it my duty) to give a detail of the proceedings in the Court below, and to show what portions of the testimony were offered in chief, and what other portions in rebuttal. I have always supposed that the jury were obliged to consider all competent testimony, whensoever and howsoever it might be offered. The experience of many practitioners will recall instances where the plaintiff's case has been established by testimony offered by the defendant. It is the function of the Court to instruct the jury as to the questions in the cause to which the evidence is to be applied. And this duty extends to all the evidence; as much to that offered in rebuttal as to any other, but no more. The testimony of the plaintiff mentioned in my opinion as to the alleged conversations with Sharp and Davis, was offered to contradict their testimony, wherein they denied that such conversations had taken place. It is difficult to see how it could contradict them, except by proving that such conversations actually occurred. And if the jury believed that these men really made the statements attributed to them, confessing such unworthy motives in rejecting the coal, they were

bound to give some effect to these facts. What inferences did they authorize the jury to draw? For what purposes was it competent to consider them? To give a satisfactory answer to these inquiries, we must turn our attention to the incidents of the trial. According to the contract, Brydon was bound to furnish coal of quality satisfactory to the masters of machinery and transportation every day for three years after the fifteenth day of July eighteen hundred and seventy-five. In deciding upon the merits of the coal, they were bound to exercise an honest judgment. There is no obscurity about the terms of the contract. It was Brydon's right during the whole term of three years to furnish coal of the prescribed quality, and he could not be deprived of this right, except by his own default. During all this time (if not in default himself,) he had a right to demand the judgment of these arbiters on the quality of his coal. . If their judgment was fairly and honestly rendered, it was conclusive upon him; but if fraudulent, it was of no effect. Now let us observe that it was alleged that these conversations occurred in August and September eighteen hundred and seventy-five, within the period embraced by the contract, and of course, during the time when the arbiters were bound to exercise their functions as judges of the coal. Now it cannot be denied that these statements, if really made by Sharp and Davis, were the most overwhelming impeachment of their integrity in making the decision, which rejected the coal. It is, of course, well settled that when a witness on cross-examination denies having made a statement, proof from the adverse party that he did make it, is not to be taken as evidence of the truth of the matters stated. But the question here is not whether matters alleged to have been stated by Sharp and Davis were true; but simply whether they actually made the statements. If they made the controverted statements, they acknowledged grievous misbe-

havior in their capacity as arbiters, and most certainly the jury had a right to take into consideration, their own self-accusations.

It has, however, been supposed that the learned Court below decided that these conversations were not evidence of fraud in the arbiters. Let us consider this question. There were two leading questions considered by the learned Judge, when he granted the prayers of the respective parties. They were closely allied to each other; yet they were distinct propositions, and were so stated to the jury. One of these questions was: Whether the plaintiff's coal was satisfactory to the masters of machinery and transportation? and the other was: Whether the rejection of it was fraudulent? By the plaintiff's first prayer, the jury were required to find "that the plaintiff was ready and willing, and did offer to deliver during the period of time covered by said contract, coal daily in quantities, and of the quality contemplated by the contract;" and further, that "the master of machinery and master of transportation of the defendant rejected said coal as not satisfactory to them, and that said rejection was not *bona fide.*" The defendant's prayers drew the distinction between these questions still more definitely. Let us look at its seventh prayer. It is in these words:

"The defendant prays the Court to instruct the jury, that under the third count of the plaintiff's declaration, the burden of proof is on the plaintiff to satisfy the jury.

" 1st. That the coal which the plaintiff tendered, and was ready and willing to deliver to the defendant, was of such quality as was satisfactory to both the masters of transportation and machinery of the defendant.

" 2nd. That the defendant falsely pretended that said coal was not of the quality contemplated by the agreement between plaintiff and defendant, offered in evidence, and was not satisfactory to its masters of transportation and machinery, although in fairness and in truth, the

same was satisfactory both to its said master of transportation and its said master of machinery."

The eighth is as follows:

"That the burden of proof is upon the plaintiff, to satisfy the jury by the evidence that the coal which he was ready and willing to furnish to the defendant, or which he tendered and offered to defendant, was of such a quality as was satisfactory to both the master of transportation and the master of machinery of the defendant, and if he fails so to satisfy the jury, the plaintiff is not entitled to recover, unless he shall further prove to the satisfaction of the jury, that the approval of the quality of his coal was withheld, or refused by said officers fraudulently, or in bad faith, or by the fraudulent procurement of the defendant, or its officers."

Now the eleventh prayer of the defendant instructed the jury that the testimony of Brydon as to these conversations of Sharp and Davis, "was not evidence of the existence of the facts stated in said alleged conversations," and that it was "not to be regarded as proof, that said coal was satisfactory to said Sharp, and to said Davis." But the Court did not say that they were not to be considered by the jury in determining the question of fraud. I have mentioned the ruling of the Court in granting the eleventh prayer of the defendant, because it has been made the subject of considerable discussion; but it is by no means to be supposed that it is binding on us. The legitimate questions before us are those embraced by the defendant's exceptions. If we think the Court below was right in its rulings on these questions, we are obliged to affirm; and we are not required to assume that the Court was right in other rulings, favorable to the defendant, which are not brought before us by exception. We could not, for instance, reverse the judgment, because the Court refused to take the case from the jury, if we found that the evidence which had been admitted, was sufficient

for their consideration; even if the Court had erroneously instructed the jury, at the instance of the defendant, to disregard essential and indispensable portions of the proof. It would be a great abuse of justice, to reverse a correct ruling, because a mistake had been made in the process by which the result was reached. As a matter of course, I have confined this discussion to the questions of law arising on this record. It has been my duty to consider the purposes for which the jury were required to consider the evidence. The law does not permit me to express any opinion on the credibility of the witnesses, or on the correctness of the verdict.

My effort has been to perform the full measure of my duty, and to avoid transgressing its limits by a hair's-breadth. There was other evidence on the part of the plaintiff which would have taken the case to the jury, and it may consequently be thought that this discussion of the competency of the alleged conversations was unnecessary. It is true that the result in this Court is not affected by the decision of the question; it must, nevertheless, be admitted that it is very important that the judgments of the Appellate Court should not only be correct, but that they should also be grounded on sound principles.

The questions arising on many of the exceptions are settled, by what was said in the opinion originally delivered. With respect to those not settled in this way; although they were fully considered, inasmuch as their importance was limited to this particular case, I did not think it necessary to insert a detailed discussion of them in the opinion.

(Filed 19th November, 1886.)